MERICKA v DEPARTMENT OF COMMUNITY HEALTH

Docket No. 280596. Submitted March 4, 2009, at Detroit. Decided March 19, 2009, at 9:05 a.m.

The St. Clair Circuit Court, Daniel J. Kelly, J., affirmed a decision of a Department of Human Services hearing referee that the petitioner, Georgette Mericka, did not have a developmental disability, as that term is defined in MCL 330.1100a(21), and that the petitioner therefore was not entitled to Medicaid supports and services provided through the respondent, the Department of Community Health, and the intervening respondent, St. Clair County Community Mental Health. The petitioner sought leave to appeal, which the Court of Appeals denied in an unpublished order, entered April 3, 2008 (Docket No. 280596). The Supreme Court, in lieu of granting leave to appeal, remanded the case to the Court of Appeals for consideration as on leave granted. 482 Mich 996 (2008).

The Court of Appeals *held*:

The trial court and the hearing referee both erred by determining that the petitioner did not have a functional limitation of the major life activity of "[c]apacity for independent living," MCL 330.1100a(21)(a)(*iv*)(F), because she has the mental capacity for living independently, even though she does not have the physical capacity to live independently. The Legislature did not limit an individual who is physically, but not mentally, incapable of living independently from being considered as having a substantial functional limitation on his or her capacity for independent living. There is no dispute that the petitioner has substantial functional limitations in the areas of self-care and mobility, MCL 330.1100a(21)(a)(*iv*)(A) and (D). Therefore, because of her limitations in the capacity for independent living, she has substantial functional limitations in three areas of major life activity and is properly considered to have developmental disability under MCL 330.1100a(21). The petitioner is entitled to the benefits sought. The order of the trial court must be reversed.

Reversed.

MENTAL HEALTH — DEVELOPMENTAL DISABILITIES — WORDS AND PHRASES — CAPACITY FOR INDEPENDENT LIVING.

A person may be found to have a substantial functional limitation in

the area of major life activity concerning the capacity for independent living, for purposes of determining whether the person has a developmental disability, if the person is not physically able to live independently even though the person is mentally capable of living independently (MCL 330.1100a[21][a][*iv*][F]).

*Hill Devendorf, P.C.* (by *John D. Adair*), for Georgette Mericka.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, and *Morris J. Klau*, Assistant Attorney General, for the Department of Community Health.

*Frederick F. Swegles* for St. Clair County Community Mental Health.

Amicus Curiae:

*Veena Rao* for the Michigan Protection and Advocacy Service, Inc.

Before: JANSEN, P.J., and BORRELLO and STEPHENS, JJ.

BORRELLO, J. Petitioner, Georgette Mericka, appeals the trial court's order affirming a decision of a hearing referee of the administrative tribunal for the Department of Human Services that she did not have a developmental disability under MCL 330.1100a(21) and denying her specialty supports and services. We originally denied petitioner leave to appeal.[1] Thereafter, petitioner sought leave to appeal in the Michigan Supreme Court; in lieu of granting leave to appeal, the Supreme Court remanded the matter to this Court "for consideration as on leave granted." *Mericka v Dep't of Community Health*, 482 Mich 996 (2008). For the reasons set forth in this opinion, we reverse.

---

[1] *Mericka v Dep't of Community Health*, unpublished order of the Court of Appeals, entered April 3, 2008 (Docket No. 280596).

## I. FACTS AND PROCEDURAL HISTORY

Petitioner is a female who is almost 50 years old. She was diagnosed at age 21 with Multifocal Motor Neuropathy (MMN). MMN is a progressive condition for which there is no cure; it is characterized by muscle weakness, muscle wasting, and muscle twitching and cramping. The most current information in the lower court record indicates that petitioner is married and shares a home with her mother and her husband. She is completely dependent on others for assistance with self-care, transfers, repositioning, and mobility. She also requires assistance with tasks such as blowing her nose or wiping away a tear. However, she can occasionally feed herself and drink from a straw when someone else sets it up for her.

It is undisputed that petitioner is mentally and intellectually sound. She is her own guardian and is capable of making her own decisions. She is mentally, but not physically, able to complete all activities of daily living. She earned a Bachelor of Arts degree and works part-time as the director of resource development at the Blue Water Center for Independent Living. Because of her MMN, however, petitioner requires aides and assistive technology to enable her to do her job, and she lacks the stamina to work full-time.

Respondent Michigan Department of Community Health (DCH) operates the "Medicaid Managed Specialty Supports and Services 1915(b)/(c) Waiver Program"[2] to provide supports and services for individuals

---

[2] The § 1915(b) specialty and supports and services program is relevant to the facts of this case and is explained in the order of the hearing referee of the Department of Human Resources as follows:

The Medical Assistance Program is established pursuant to Title XIX of the Social Security Act and is implemented by Title 42 of the Code of Federal Regulations (CFR). It is administered in accordance with state statute, the Social Welfare Act, the Admin-

with developmental disabilities. Petitioner applied to

istrative Code, and the State Plan under Title XIX of the Social Security Act Medical Assistance Program.

"Title XIX of the Social Security Act, enacted in 1965, authorizes Federal grants to States for medical assistance to low-income persons who are age 65 or over, blind, disabled, or members of families with dependent children or qualified pregnant women or children. The program is jointly financed by the Federal and State governments and administered by States. Within broad Federal rules, each State decides eligible groups, types and range of services, payment levels for services, and administrative and operating procedures. Payments for services are made directly by the State to the individuals or entities that furnish the services."

*42 CFR 430.0*

"The State plan is a comprehensive written statement submitted by the agency describing the nature and scope of its Medicaid program and giving assurance that it will be administered in conformity with the specific requirements of title XIX, the regulations in this Chapter IV, and other applicable official issuances of the Department. The State plan contains all information necessary for CMS to determine whether the plan can be approved to serve as a basis for Federal financial participation (FFP) in the State program."

*42 CFR 430.10*

Section 1915(b) of the Social Security Act provides:

"The Secretary, to the extent he finds it to be cost-effective and efficient and not inconsistent with the purposes of this subchapter, may waive such requirements of section 1396a of this title (other than subsection (s) of this section) (other than sections 1396a(a)(15), 1396a(bb), and 1396a(a)(10)(A) of this title insofar as it requires provision of the care and services described in section 1396d(a)(2)(C) of this title) as may be necessary for a State. . . [.]"

The State of Michigan has opted to simultaneously utilize the authorities of the 1915(b) and 1915(c) programs to provide a continuum of services to disabled and/or elderly populations. Under approval from the Centers for Medicare and Medicaid Services (CMS), the Department of Community Health (Department) operates a section 1915(b) Medicaid Managed Specialty Services and Supports program waiver in conjunction with a section 1915(c) Habilitation and Supports Waiver.

\* \* \*

receive benefits as a developmentally disabled person from intervening respondent St. Clair County Community Mental Health (CMH), through its contract agency Thumb Mental Health Alliance. The CMH in turn contracts with the DCH to provide mental health services. The Thumb Mental Health Alliance determined that petitioner was developmentally disabled under MCL 330.1100a(21), and she began receiving § 1915(b) specialty supports and services. She received such benefits for approximately 1½ years.

In April 2006, Dr. Tom Seilheimer, a psychologist with the CMH, performed a second opinion review of petitioner's file to determine her eligibility to receive § 1915(b) specialty supports and services. Dr. Seilheimer determined that petitioner had substantial functional limitations in the areas of self-care and mobility, MCL 330.1100a(21)(a)(*iv*)(A) and (D), but that she had no substantial functional limitations in the areas of receptive and expressive language, learning, self-direction, capacity for independent living, and economic self-sufficiency, MCL 330.1100a(21)(a)(*iv*)(B), (C), (E), (F), and (G). Because he determined that petitioner only had substantial functional limitations in two of the seven areas of major life activity listed in MCL 330.1100a(21)(a)(*iv*), and the statute requires substantial functional limitations in three areas to qualify as a developmental disability, Dr. Seilheimer concluded that petitioner was not developmentally disabled and had been receiving § 1915(b) specialty supports and services in error.

---

The Department's contract with CMH requires CMH to provide State Medicaid Plan services through the Medicaid Prepaid Specialty Mental Heath and Substance Abuse Services combination 1915(b)/(c) waiver to Medicaid beneficiaries who meet the eligibility requirements for Medicaid specialized ambulatory mental health/developmental disability services. [Order of Reconsideration, Department of Human Services hearing referee Martin D. Snider, December 14, 2006, pp 2-3.]

Petitioner filed a timely request for review of the CMH's decision in the administrative tribunal for the DCH. Following a hearing, hearing referee Stephen B. Goldstein reversed the CMH's determination that petitioner was not developmentally disabled and was not eligible for § 1915(b) specialty supports and services. According to Goldstein, petitioner's physical impairments resulted in a substantial functional limitation on her capacity for independent living. Because the parties agreed that she satisfied MCL 330.1100a(21)(a)(*iv*)(A) (self-care) and (D) (mobility), Goldstein ruled that petitioner was developmentally disabled and was eligible for continued § 1915(b) specialty supports and services. In light of his determination that petitioner had substantial functional limitations in three areas of major life activity listed in MCL 330.1100a(21)(a)(*iv*), Goldstein did not address whether petitioner was economically self-sufficient under MCL 330.1100a(21)(a)(*iv*)(G).

Thereafter, the CMH requested and was granted reconsideration of hearing referee Goldstein's ruling by the administrative tribunal for the Department of Human Services. On reconsideration, hearing referee Martin D. Snider reversed Goldstein's decision that petitioner was developmentally disabled and was eligible for continued § 1915(b) specialty supports and services. According to Snider, there was sufficient evidence that petitioner possessed the capacity for independent living. Furthermore, Snider ruled that there was sufficient evidence that petitioner did not have a substantial functional limitation in the area of economic self-sufficiency. Thus, Snider ruled that Goldstein erred in determining that petitioner had a developmental disability and was eligible to receive specialty supports and services.

Petitioner appealed Snider's decision to the St. Clair Circuit Court. The circuit court stated that "[d]evelop-

mental disabilities are disabilities of intellect or behavior" and ruled that Snider's decision that petitioner possessed the capacity for independent living was both lawful and supported by competent, material, and substantial evidence. The trial court further stated that Snider's determination that petitioner did not have a substantial functional limitation in the area of economic self-sufficiency was also supported by competent, material, and substantial evidence. Thus, the circuit court affirmed Snider's decision that petitioner was ineligible to receive § 1915(b) specialty supports and services because she is not developmentally disabled.

II. ANALYSIS

A. STANDARD OF REVIEW

The circuit court reviewed the decision of the administrative tribunal for the Department of Human Services. Judicial review of decisions, findings, rulings, and orders of an administrative officer includes, "as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record." Const 1963, art 6, § 28. Judicial review of an administrative agency's decision regarding a matter of law is limited to determining whether the decision was authorized by law. *Id.* *Romulus v Dep't of Environmental Quality*, 260 Mich App 54, 64; 678 NW2d 444 (2003).

This Court's review of a circuit court's review of an administrative decision is "to determine whether the lower court applied correct legal principles and whether it misapprehended or misapplied the substantial evidence test to the agency's factual findings, which is

essentially a clearly erroneous standard of review." *VanZandt v State Employees' Retirement Sys*, 266 Mich App 579, 585; 701 NW2d 214 (2005). The circuit court's legal conclusions are reviewed de novo and its findings of fact are reviewed for clear error. *Davis v State Employees' Retirement Bd*, 272 Mich App 151, 152; 725 NW2d 56 (2006). "Great deference is accorded to the circuit court's review of the [administrative] agency's factual findings"; however, "substantially less deference, if any, is accorded to the circuit court's determinations on matters of law." *Romulus, supra* at 62.

This appeal involves an issue of statutory interpretation. If an administrative agency or trial court interprets a statute, such a determination is a question of law subject to review de novo. *DaimlerChrysler Services North America LLC v Dep't of Treasury*, 271 Mich App 625, 631; 723 NW2d 569 (2006).

### B. MCL 330.1100a(21)

Petitioner argues that hearing referee Snider erred in determining that she was not entitled to § 1915(b) specialty supports and services and that the circuit court erred in affirming Snider's decision. Whether petitioner is entitled to receive such support depends on whether she has a developmental disability under MCL 330.1100a(21), which provides, in relevant part:

"Developmental disability" means . . . :

(a) If applied to an individual older than 5 years of age, a severe, chronic condition that meets all of the following requirements:

(*i*) Is attributable to a mental or physical impairment or a combination of mental and physical impairments.

(*ii*) Is manifested before the individual is 22 years old.

(*iii*) Is likely to continue indefinitely.

    (*iv*) Results in substantial functional limitations in 3 or more of the following areas of major life activity:

      (A) Self-care.

      (B) Receptive and expressive language.

      (C) Learning.

      (D) Mobility.

      (E) Self-direction.

      (F) Capacity for independent living.

      (G) Economic self-sufficiency.

    (*v*) Reflects the individual's need for a combination and sequence of special, interdisciplinary, or generic care, treatment, or other services that are of lifelong or extended duration and are individually planned and coordinated.

The parties agree that petitioner has substantial functional limitations in the areas of self-care and mobility, and that she does not have substantial functional limitations in the areas of receptive and expressive language, learning, and self-direction. Because petitioner must have substantial functional limitations in three or more areas of major life activity to qualify as developmentally disabled under the statute, she must also have a substantial functional limitation in either the area of capacity for independent living or economic self-sufficiency. Both the circuit court and hearing referee Snider determined that petitioner possessed the capacity for independent living because she was mentally capable of living independently. Thus, we must determine whether petitioner, who is mentally, but not physically, able to live independently, has a substantial functional limitation in the area of capacity for independent living. Resolving this issue requires this Court to construe the phrase "[c]apacity for independent living" in MCL 330.1100a(21)(a)(*iv*)(F).

The primary goal of statutory interpretation is to ascertain and give effect to the Legislature's intent as expressed by the language of the statute. *Neal v Wilkes*, 470 Mich 661, 665; 685 NW2d 648 (2004). Courts must give effect to every word, phrase, or clause in a statute and avoid an interpretation that renders nugatory or surplusage any part of a statute. *Koontz v Ameritech Services, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002). Provisions must be read in the context of the entire statute so as to produce a harmonious result. *People v Couzens*, 480 Mich 240, 249; 747 NW2d 849 (2008).

In affirming hearing referee Snider's determination that petitioner possessed the "capacity for independent living" notwithstanding her physical inability to live independently, the trial court essentially imposed a limitation or restriction on the phrase "capacity for independent living" that is not included in the statute itself. The circuit court's and Snider's interpretation of the phrase "capacity for independent living" in MCL 330.1100a(21)(a)(*iv*)(F) precludes an individual who is mentally, but not physically, able to live independently from possessing a substantial functional limitation in the "capacity for independent living" area of major life activity. The error in such a construction is that the Legislature did not so limit the phrase "capacity for independent living." The word "mental" or "intellectual" does not appear before the provision "capacity for independent living." The Legislature could have imposed such a limitation, but it did not do so. In construing a statute, this Court will not read anything into clear statutory language that is not within the manifest intent of the Legislature as derived from the words of the statute itself. *City of Warren v Detroit*, 261 Mich App 165, 169; 680 NW2d 57 (2004). If the Legislature had intended to preclude an individual who is physically, but not mentally, incapable of living independently from

being considered as having a substantial functional limitation on his or her "capacity for independent living," it would have explicitly so indicated by including the term "mental" or "intellectual" before the phrase "capacity for independent living." We decline to read such a limitation into the statute when the Legislature did not include it in the statute itself.[3]

The fact that the Legislature referred to both "mental and physical impairments" in MCL 330.1100a(21)(a)(i) provides further support for the conclusion that an individual who lacks *either* the mental *or* physical capacity for independent living has a substantial functional limitation under MCL 330.1100a(21)(a)(iv)(F). The Legislature's reference to "mental and physical impairments" in MCL 330.1100a(21)(a)(i) shows that the Legislature was cognizant of, and considered the distinction between, mental and physical impairments or capacities. The omission of language from one part of a statute that is included in another part should be construed as intentional. *Thompson v Thompson*, 261 Mich App 353, 361 n 2; 683 NW2d 250 (2004). The fact that the Legislature chose not to limit the word "capacity" in MCL 330.1100a(21)(a)(iv)(F) by inserting the word "mental" before it, when the Legislature clearly recognized the distinction between mental and physical impairments earlier in the statute, is further evidence that the Legislature did not intend to limit a person's capacity to live independently to the person's mental capacity for independent living.

Further support for the conclusion that "capacity for independent living" is not limited to an individual's

---

[3] We observe that the testimony of Dr. Tom Seilheimer regarding his definition or interpretation of the phrase "capacity for independent living" is irrelevant to our construction of MCL 330.1100a(21)(a)(iv)(F). This Court's responsibility in interpreting a statute is to examine and give effect to the language used by the Legislature without regard to our own opinions or the opinions of any other individuals.

mental capacity to live independently is found in the dictionary definition of the term "capacity." The Legislature did not define the phrase "capacity for independent living" or expressly state whether the phrase encompassed only an individual's mental or physical capacity for independent living. We give undefined terms their ordinary meanings. *Haynes v Neshewat*, 477 Mich 29, 36; 729 NW2d 488 (2007). Furthermore, we may consult a dictionary to construe the meaning of an undefined term. *Id.* *Merriam-Webster's Online Dictionary* (2009) defines "capacity" as "an individual's mental or physical ability[.]" In light of this dictionary definition of the term "capacity," it is reasonable to construe the phrase "capacity for independent living" to include an individual's mental or physical capacity for independent living.

In sum, we find that the circuit court erred in construing the phrase "capacity for independent living" as being limited to an individual's mental capacity to live independently. Such a narrow construction of the phrase is not supported by the plain language of the statute or the dictionary definition of the word "capacity." Because the parties agree that petitioner possesses substantial functional limitations in two other areas of major life activities listed in MCL 330.1100a(21)(a)(*iv*), petitioner is developmentally disabled under MCL 330.1100a(21) and is therefore entitled to § 1915(b) supports and services.

Reversed.