# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF RIVERVIEW,

Plaintiff-Appellee,

v

FOREST ISLAND RECYCLING II, INC.,
FOREST ISLAND RECYCLING I, INC., and
ANTHONY JOSEPH,

Defendants,

and

RICHARD J. GIBBS, JR., and MARK SIMON,

Intervenors-Appellants.

UNPUBLISHED
May 19, 2015

No. 319786
Wayne Circuit Court
LC No. 10-006512-CK

Before: TALBOT, C.J., and CAVANAGH and METER, JJ.

PER CURIAM.

Intervenors, Richard J. Gibbs, Jr. and Mark Simon, appeal as of right an opinion and order denying their motion to quash execution of a consent judgment between plaintiff, City of Riverview and defendants, Forest Island Recycling I, Inc., Forest Island Recycling II, Inc., and Anthony Joseph, in this case arising under the uniform fraudulent transfer act (UFTA), MCL 566.31 *et seq*. We affirm.

## I. STANDARD OF REVIEW

The decision whether to quash an execution of judgment rests within the sound discretion of a trial court. *Arkin Distrib Co v Jones*, 288 Mich App 185, 187; 792 NW2d 772 (2010). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *AFP Specialties, Inc v Vereyken*, 303 Mich App 497, 517; 844 NW2d 470 (2014) (internal quotation marks omitted). A trial court's findings of fact are reviewed for clear error. *Mericka v Dep't of Community Health*, 283 Mich App 29, 36; 770 NW2d 24 (2009). "A finding is clearly erroneous where, after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake has been made." *Alan Custom Homes, Inc v Krol*,

-1-

256 Mich App 505, 512; 667 NW2d 379 (2003). We review de novo the interpretation of statutes as a question of law. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

## II. INTERVENORS' CLAIMS ON APPEAL

Intervenors argue that the trial court erred in multiple respects, particularly in finding that the UFTA was violated and that certain assets were fraudulently transferred.

## A. VIOLATION OF UFTA

Intervenors first claim that the trial court erred in finding that the transfer of assets from Forest Island II to them violated the UFTA. We disagree.

In *Dillard v Schlussel*, ___ Mich App ___, ___; ___ NW2d ___ (2014, Docket No. 315485); slip op at 9, this Court provided a brief overview of the UFTA:

> "The modern law of fraudulent transfers had its origin in the Statute of 13 Elizabeth, which invalidated 'covinous and fraudulent' transfers designed 'to delay, hinder or defraud creditors and others.' " The [UFTA] codifies the common law. The UFTA is "designed to prevent debtors from transferring their property in bad faith before creditors can reach it." The Supreme Court of Wisconsin has explained: "The Uniform Fraudulent Transfer Act reflects a strong desire to protect creditors and to allow for the smooth functioning of our credit-based society. It is a creditor-protection statute. Without such protection for creditors, 'creditors would generally be unwilling to assume the risk of the debtor's fraudulent transfers.' " Our Legislature enacted the [UFTA] in 1998. [Citations omitted; footnote omitted.]

Generally, the UFTA provides two types of fraudulent transfers in violation of the act. The first type, i.e., "actual intent to defraud," is defined as follows:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . :
>
> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor.
>
> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor did either of the following:
>
> (*i*) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.
>
> (*ii*) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due. [MCL 566.34(1).]

Because "debtors rarely admit to having deliberately placed assets out of the reach of their creditors," *Dillard*, ___ Mich App at ___: slip op at 11, the "badges of fraud" provided under MCL 566.34(2) are used to determine whether a transfer qualifies as one made with fraudulent intent:

(2) In determining actual intent under [MCL 566.34(1)(a)], consideration may be given, among other factors, to whether 1 or more of the following occurred:

(a) The transfer or obligation was to an insider.

(b) The debtor retained possession or control of the property transferred after the transfer.

(c) The transfer or obligation was disclosed or concealed.

(d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

(e) The transfer was of substantially all of the debtor's assets.

(f) The debtor absconded.

(g) The debtor removed or concealed assets.

(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(j) The transfer occurred shortly before or shortly after a substantial debt was incurred.

(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

"Badges of fraud are not conclusive, but are more or less strong or weak according to their nature and the number occurring in the same case, and may be overcome by evidence establishing the bona fides of the transaction. However, a concurrence of several badges will always make out a strong case." *Dillard*, ___ Mich App at ___; slip op at 11, quoting *Bentley v Caille*, 289 Mich 74, 78; 286 NW163 (1939). "The question of fraudulent intent, in all cases arising under [the UFTA] . . . , shall be deemed a question of fact and not of law. MCL 566.224; *Dillard*, ___ Mich App at ___; slip op at 11.

Additionally, the UFTA provides a second species of fraudulent transfer, commonly known as "constructive fraud," *Dillard*, ___ Mich App at ___; slip op at 11, provided in MCL 566.35:

-3-

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

(2) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

The UFTA defines "asset" as "property of a debtor," but does not include (1) property that is encumbered by a valid lien, (2) property that is exempt under nonbankruptcy law, or (3) an interest in property that is held in a tenancy by the entirety, to the extent that a creditor who holds a claim against only one tenant cannot attack the tenancy by the entirety. MCL 566.31(b)(*i*)-(*iii*). "Transfer" is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset. Transfer includes payment of money, release, lease, and creation of a lien or other encumbrance." MCL 566.31(l). The term "insider," in the context of when the debtor is a corporation, is defined to include all of the following:

(A) A director of the debtor.

(B) An officer of the debtor.

(C) A person in control of the debtor.

(D) A partnership in which the debtor is a general partner.

(E) A general partner in a partnership described in sub-subparagraph (D).

(F) A relative of a general partner, director, officer, or person in control of the debtor. [MCL 566.31(g)(*ii*)(A)-(F).]

Further, a "lien" is defined as "a charge against or an interest in property to secure payment of a debt or performance of an obligation, and includes a security interest created by agreement, a judicial lien obtained by legal or equitable process or proceedings, a common-law lien, or a statutory lien." MCL 566.31(h).

Here, because the trial court's holding considered the "badges of fraud," it appears that its decision was founded upon the "actual intent" species of fraudulent transfer. See *Dillard*, ___ Mich App at ___; slip op at 11-12. However, before addressing the trial court's findings regarding the badges of fraud, intervenors first claim that the trial court "skipped" the initial step of any UFTA analysis by failing to determine whether a "transfer" of "assets" ever occurred under the act. The issue appears to center on the interaction of MCL 566.31(b), defining "asset" under the act, and MCL 566.31(l), defining "transfer" under the act. As noted above, the term "asset" as used in the UFTA includes all property of a debtor, but does not include "[p]roperty to

-4-

the extent that it is encumbered by a *valid lien*." MCL 566.31(b)(*i*) (emphasis added). "Valid lien" is defined by the UFTA as "a lien that is effective against the holder of a judicial lien subsequently obtained by legal or equitable process or proceedings." MCL 566.31(m). However, "transfer" is defined broadly under the UFTA, and includes "payment of money, release, lease, and *creation of a lien or other encumbrance*." MCL 566.31(l) (emphasis added). In addressing whether the UFTA even applies to the instant transfer, the trial court was required to determine whether the security interest possessed by intervenors was *valid*, thereby removing it from the confines of the UFTA. MCL 566.31(b)(*i*). Alternatively, the very security interests on which intervenors rely to show that the transfer of assets was done pursuant to a valid "lien" could be considered a "transfer" that is ultimately fraudulent under the UFTA. MCL 566.31(l). In order to make this determination, the trial court necessarily had to consider if the security interest was created "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." MCL 566.34(1)(a). Therefore, the trial court did not "skip" a step by assessing the badges of fraud; such an analysis was required to determine if intervenors' security interest was valid at all.

Further, even assuming, arguendo, that intervenors' "general security interest in all assets" of Forest Island II is sufficient to constitute a "lien," Riverview's judgment lien and judgment levy against Forest Island I existed before intervenors' security interests; it was specifically adopted by Forest Island II in the second contract for waste disposal services with Riverview; and Simon was involved in the negotiation of the contract. Therefore, Forest Island II adopted the *antecedent* lien possessed by Riverview against Forest Island I, and it does not meet the definition of "a judicial lien *subsequently obtained* by legal or equitable process or proceedings," MCL 566.31(m) (emphasis added), as required to make intervenors' security interests "valid lien[s]" under the UFTA.

Next, we turn to whether Riverview established that Forest Island II and intervenors had actual intent to defraud Forest Island II's creditors. The trial court found that Riverview proved sufficient badges of fraud, and that intervenors admitted that the property was transferred after Riverview's claim arose and the case was pending. On this basis, the fourth badge of fraud, i.e., "[b]efore the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit," MCL 566.34(2)(d), was sufficiently proved.

Though the trial court did not expressly address the other badges of fraud beyond its blanket statement that Riverview met its burden, the trial court's findings of fact and the hearing admissions of intervenors sufficiently prove a number of the other badges of fraud provided in MCL 566.34(2). Factor (a) creates an inference of fraudulent intent to transfer when the transfer is made to an insider. MCL 566.34(2)(a). The UFTA defines an "insider" in the context of a corporation debtor as, among other definitions, a director, officer, or other person in control of the debtor. MCL 566.31(g)(*ii*)(A)-(C). Here, Gibbs and Simon were both shareholders of Forest Island II, and therefore, exercised sufficient control over the corporation to be considered insiders. Additionally, Simon admitted that he had signed the surrender agreement that transferred the assets to Simon and Gibbs on behalf of Forest Island II, in his capacity as president of the corporation. Thus, the evidence satisfied this badge of fraud.

Factor (b) is satisfied if "[t]he debtor retained possession or control of the property transferred after the transfer." MCL 566.34(2)(b). As the trial court noted, the property that was transferred to intervenors was seized from Forest Island II's place of business, located at 3300

Denton Street, Hamtramck, Michigan. Although the personal property was transferred from Forest Island II to intervenors pursuant to a surrender agreement, the property's physical location remained in Forest Island II's building, i.e., in its possession.

Factor (e) provides that a badge of fraud is established if "[t]he transfer was of substantially all of the debtor's assets." MCL 566.34(2)(e). During the evidentiary hearing, Gibbs testified that he and Simon "repossessed everything" from Forest Island II. Even if Gibbs's statement was more colloquial than a statement of true accounting, neither party has ever asserted that Forest Island II had additional assets left after intervenors received the transferred property. Therefore, there is sufficient evidence to satisfy factor (e).

Finally, factor (i) is satisfied if "[t]he debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred." MCL 566.34(2)(i). At the evidentiary hearings, Mathias testified that Forest Island II's liabilities exceeded its assets, and Joseph testified that Forest Island II was insolvent for practically its entire existence. Thus, at all times relevant to the instant dispute, and at the time the property was transferred to Gibbs and Simon, Forest Island II, "the debtor[,] was insolvent." *Id*. Accordingly, the evidence supports the existence of at least five of the 11 factors that give rise to an inference of actual intent to defraud. "These strands of direct and circumstantial evidence give rise to a prima facie case under MCL 566.34(1)(a)." *Dillard*, ___ Mich App at ___; slip op at 14.

In addition to the trial court's proper finding of "actual intent" to defraud under the UFTA, the evidence admitted at the evidentiary hearings supports a finding of fraudulent transfer under the "constructive fraud" provision of the UFTA. Again, a "constructive fraud" claim can be shown as follows:

> A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent. [MCL 566.35(2).]

Riverview had an existing default judgment against Forest Island I that was expressly adopted by Forest Island II in their June 1, 2009 contract for waste disposal services. Intervenors received secured interests in all of Forest Island II's property for antecedent loans that they allegedly made to the company, which ultimately led to the surrender of Forest Island II's property to intervenors. Riverview's claim arose against Forest Island I on November 14, 2008, and it was explicitly adopted by Forest Island II, with Simon's direct knowledge, on June 1, 2009. Further, the testimony at the evidentiary hearing showed that Forest Island II was insolvent throughout its entire existence. Thus, the trial court could have found that the transfer of assets to intervenors occurred (1) after Riverview's claim arose against Forest Island I—though before it was expressly adopted by Forest Island II, (2) to insiders, i.e., Gibbs and Simon, and (3) at a time when Forest Island II was insolvent. MCL 566.35(2).

Intervenors next claim the trial court erred in finding they failed to rebut the presumption that the transaction was fraudulent. In support of this contention, they argue that the trial court did not address their claim that the transfer was in satisfaction of a valid security interest intervenors held pursuant to numerous loans given to Forest Island II. However, as noted above,

the very creation of the security interest held by Gibbs and Simon could give rise to a fraudulent transfer under the act. See MCL 566.31(l). Whether the subsequent transfer of assets was proper and pursuant to a valid lien was the question that was ultimately determined through the trial court's analysis of the badges of fraud. MCL 566.38(1) does provide defenses to bona fide purchasers, providing that: "A transfer or obligation is not voidable under [MCL 566.34(1)(a)] against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." The trial court did not commit clear error in finding that the security interest for "loans in excess of $150,000.00" was unsupported when the testimony at the evidentiary hearings showed that Gibbs and Simon were owed far less than $150,000. Although the subsequent asset transfer was valued at far less than the $150,000 that intervenors' security interest claimed they were owed, it was in partial satisfaction of that unsupported claim of indebtedness. Therefore, the testimony adduced by the trial court showed that intervenors were not "person[s] who took in good faith and for a reasonably equivalent value," *id*., and therefore, intervenors' claim that their security interests rebutted the presumption that the transaction was fraudulent is without merit.

## B. FACTUAL ERROR REGARDING DETERMINATION OF ASSETS

Intervenors next contend that the trial court clearly erred in denying their motion to quash and finding that a red/orange hi-lo was properly seized pursuant to the consent judgment between Riverview and Forest Island II because the red/orange hi-lo was always owned by Gibbs, not Forest Island II. We disagree.

MCL 566.37 provides:

(1) In an action for relief against a transfer or obligation under this act, a creditor, subject to the limitations in [MCL 566.38], may obtain 1 or more of the following:

(a) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim.

(b) An attachment against the asset transferred or other property of the transferee to the extent authorized under [MCL 600.4001], and applicable court rules.

(c) Subject to applicable principles of equity and in accordance with applicable court rules and statutes, 1 or more of the following:

(*i*) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property.

(*ii*) Appointment of a receiver to take charge of the asset transferred or of other property of the transferee.

(*iii*) Any other relief the court determines appropriate.

(2) If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.  [Footnote omitted.]

Additionally, the UFTA provides that fraudulent transfers may be set aside "in an action by a creditor."  MCL 566.38(2).

Here, as noted above, the trial court correctly found that intervenors had committed a fraudulent transfer under the UFTA, and therefore, avoidance of that transfer, and seizure of the asset, was a proper remedy available to Riverview.  See MCL 566.37(1)(a).  However, intervenors claim that the evidence was uncontroverted that the red/orange hi-lo that was part of the property seized by Riverview was never owned by Forest Island II, and therefore, should not have been seized pursuant to the consent judgment.  Despite intervenors' contention, Joseph testified that all of the items listed on the partial payment sheet and received by the court officer were at one time the rightful property of Forest Island II.  Though the parties alternatively referred to this hi-lo as either red or orange, it is clear they were referencing the same piece of equipment, especially in light of the fact that the trial judge and counsel for intervenors discussed the color ambiguity during one of the evidentiary hearings.  Thus, there was contradictory testimony between Joseph and Gibbs regarding whether the red/orange hi-lo belonged solely to Gibbs or was at one time owned by Forest Island II.  The trial court was in the best position to judge credibility and weigh the evidence elicited at the evidentiary hearings.  See MCR 2.613(C); *Chelsea Investment Group LLC v Chelsea*, 288 Mich App 239, 251; 792 NW2d 781 (2010).  Therefore, the trial court did not clearly err in finding that the red/orange hi-lo was one of the fraudulently transferred assets subject to seizure.  See *Mericka*, 283 Mich App at 36.

## III.  RIVERVIEW'S CLAIM FOR COSTS AND FEES

Finally, Riverview argues that this Court should award all costs and fees it incurred in storage of the seized assets during the pendency of these proceedings.  We disagree.

In total, Riverview requests that this Court award it $50,000 for storage fees of the seized property and $5,070 for costs attributed to towing and court officer fees.  However, as Riverview notes, the trial court did not address costs and fees in its December 10, 2013 opinion and order denying intervenors' motion to quash execution of the judgment.  And Riverview did not file a cross-appeal in this matter.  Where an appellee seeks "a decision more favorable than that rendered by the lower tribunal" the appellee is required to file a cross appeal in order for the issue to properly be before this Court.  *Cheron, Inc v Don Jones, Inc*, 244 Mich App 212, 221; 625 NW2d 93 (2000).  "Generally, failure to file a cross appeal precludes an appellee from raising an issue not appealed by the appellant."  *Kosmyna v Botsford Comm Hosp*, 238 Mich App 694, 696; 607 NW2d 134 (1999).  Accordingly, we will not consider this issue.

Affirmed.

/s/ Michael J. Talbot
/s/ Mark J. Cavanagh
/s/ Patrick M. Meter

-8-