*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LILLIAN A. SCOTT,

        Claimant-Appellant,

v

DEPARTMENT OF LABOR AND ECONOMIC
OPPORTUNITY/UNEMPLOYMENT
INSURANCE AGENCY,

        Appellee.

FOR PUBLICATION
March 10, 2022
9:05 a.m.

No. 350690
Berrien Circuit Court
LC No. 18-000266-AE

Before: SHAPIRO, P.J., and CAVANAGH and REDFORD, JJ.

SHAPIRO, P.J.

Claimant Lillian A. Scott appeals by leave granted[1] the trial court's order affirming a judgment of the Michigan Compensation Appellate Commission (MCAC) finding that Scott is time-barred from challenging the Unemployment Insurance Agency's determinations and redeterminations requiring her to pay restitution and fraud penalties under the Michigan Employment Security Act (MESA), MCL 421.1 *et seq.* For the reasons discussed in this opinion, we reverse.

## I. BACKGROUND

In October 2012, Scott successfully applied for unemployment benefits. Payment of the benefits commenced the week ending November 10, 2012 and ended on March 8, 2014.

Beginning in October 2013, the Agency began using a fraud detection software, Michigan Integrated Data Automated System (MiDAS). "MiDAS searched for discrepancies in the records of individuals who were receiving—or who, in the six years prior to the program's introduction, had received—unemployment insurance benefits." *Cahoo v SAS Analytics Inc*, 912 F3d 887, 892

---

[1] *Scott v Enterprise Synergy LLC*, unpublished order of the Court of Appeals, entered February 11, 2020 (Docket No. 350690).

(CA 6, 2019). When MiDAS detected a discrepancy, "it initiated an automated process to determine whether the individual had engaged in fraudulent behavior," which included sending the claimant a multiple-choice questionnaire with the questions, "Did you intentionally provide false information to obtain benefits you were not entitle[d] to receive," and, "Why did you believe you were entitled to benefits?" *Id*. at 892-893. However, "MiDAS did not allow for a fact-based adjudication or give the claimant the opportunity to present evidence to prove that he or she did not engage in disqualifying conduct." *Id*. at 893. And if the claimant answered either question affirmatively or did not respond to the questionnaire, a default determination of fraud was entered. *Id*.

The Agency claims to have sent the fraud questionnaire to Scott in April 2014.[2] On May 9, 2014, the Agency generated a series of four notices retroactively finding Scott disqualified from receiving unemployment benefits. For reasons that are not clear, the notices each carry their own case number, even when referring to the same matter. Specifically, in LARA case no. 0-002-333-913, the Agency generated a "Notice of Determination" informing Scott that she was disqualified from benefits because she voluntarily quit her employment on May 30, 2013. In case no. 0-001-824-775, the Agency issued an additional Notice of Determination informing Scott that her actions indicated that she intentionally misled or concealed information to obtain benefits she was not entitled to and that her benefits will be terminated on any claims active on May 25, 2013. The Agency also produced a separate document titled, "Restitution," listing the amounts of overpayments and penalties that Scott was required to pay for benefits received from June 8, 2013, to March 8, 2014.

In addition to the Notices of Determination, the Agency issued two "Notice[s] of Redetermination." In case no. 0-002-333-915, the Notice of Redetermination found that Scott was ineligible for benefits collected from November 04, 2012 through June 01, 2013, because she was working full-time during that time period. The second Notice of Redetermination, issued in case no. 0-002-333-916, asserted that Scott's actions indicated that she intentionally misled or concealed information to obtain benefits she was not entitled to and that her benefits will be terminated on any claims active on November 03, 2012. The Agency also produced a statement of restitution owed, totaling the amounts of overpayments and penalties assessed for November 10, 2012, through June 1, 2013.

Each notice informed Scott of how to protest a determination and how to appeal a redetermination. She claims, however, that she did not receive any of the May 9, 2014 notices.

At some point,[3] the Agency began intercepting Scott's income tax refunds and garnishing her wages in satisfaction of the outstanding restitution and penalty amounts. In January 2016, Scott requested a financial hardship waiver from the Agency in order to reduce the financial burden

---

[2] Scott was not asked at the administrative hearing whether she received the fraud questionnaire.

[3] Scott believed that her tax refunds were intercepted in 2014 and 2015. She estimated that the garnishments began in late 2015 or early 2016.

imposed by the Agency's efforts to recoup overpayment of benefits and penalties. The Agency denied the request for the reason that overpayments generated by fraud are not subject to waiver.

The automatic fraud determinations issued pursuant to MiDAS have spawned multiple lawsuits by unemployment benefit claimants alleging, in part, inadequate predeprivation notice. See *Bauserman v Unemployment Ins Agency*, 330 Mich App 545; 950 NW2d 446 (2019); *Cahoo*, 912 F3d 887; *Zynda v Arwood*, 175 F Supp 3d 791 (ED Mich, 2016). According to the Agency, as part of the settlement in *Zynda*, it voluntarily reviewed misrepresentation determinations made between 2013 and 2015 and issued certain notices upon completion of the review. In June 2107, the Agency issued notices to Scott summarily concluding that after review of her case "there was no basis to reconsider the primary case associated with the intentional misrepresentation (re)determination."

On Scott's behalf, in March 2018 the University of Michigan Law School's Unemployment Insurance Clinic filed a protest of the 2014 determinations and redeterminations with the Agency. This protest included a request to reopen Scott's cases. The Agency denied the request, concluding that it was time-barred because it had not been filed within one year of the mailing of the May 9, 2014 notices. See MCL 421.32a(2), as amended by 2011 PA 269. Scott then filed an appeal of the Agency's decision and requested an administrative hearing.

Scott testified before the Administrative Law Judge (ALJ) and denied receiving the determinations and redeterminations that bore the mail date of May 9, 2014, and her address. She explained that it was not until she called the Agency in 2016 that she became aware of the fraud allegations against her.

Laura Glynn, a claims examiner with the Agency, testified that Scott elected to receive any correspondence from the Agency via mail and that the address on the May 9, 2014 notices was the address that Scott provided. Glynn stated that this was the address to which the notices would have been sent. Glynn further testified that she had reviewed the Agency's file in this matter and found no evidence that the notices were ever returned to the Agency as undeliverable. Glynn also testified, however, that she had no personal knowledge whether or not the notices were mailed and that Scott's file contained no proofs of service or other record of mailing for any of the notices.

The ALJ affirmed the Agency's denial to reopen Scott's case because the ALJ found that Scott did not establish a timely protest or good cause for her late protest of the 2014 determinations and redeterminations. The MCAC then affirmed the decision of the ALJ, and Scott filed a timely appellate challenge in the circuit court. In an opinion and order, the trial court rejected Scott's challenges to the rulings of ALJ and the MCAC and dismissed her appeal. Scott now appeals in this Court. The Michigan League for Public Policy filed an amicus brief in support of Scott's positions on appeal.[4]

---

[4] A circuit court conducting a direct review of an administrative decision must decide whether the action was authorized by law and whether the decision was supported by competent, material, and substantial evidence on the record. Const 1963, art 6, § 28; *Motycka v General Motors Corp*, 257

## II. INVALID "REDETERMINATIONS"

After Scott's appeal to this Court, the Michigan Supreme Court decided *Dep't of Licensing and Regulatory Affairs/Unemployment Ins Agency v Lucente*, ___ Mich ___; ___ NW2d ___ (2021) (Docket Nos. 160843 and 160844). The underlying facts are substantially similar to the instant case. After the claimants-appellants in that case had received unemployment benefits, the Agency sent two "redeterminations" to each claimant. "One of the notices described the appellant's new employment and explained that it made the appellant ineligible to receive the already-paid benefits. The other notice alleged that the appellant had intentionally concealed their new employment from the Agency (on the basis of the answers provided while certifying)." *Id*. at ___; slip op at 11. "The Agency also mailed each appellant a separate document that stated the appellants' repayment obligations: restitution for the overpayment and financial penalties for the fraud." *Id*. at ___; slip op at 12.

The claimants argued that if the notices sent by the Agency were in fact "redeterminations" of the earlier benefit determinations, they were untimely under MCL 421.32a(2).[5] The Supreme Court determined that MCL 421.62 authorizes the Agency "to make original *determinations* imposing restitution for an overpayment or penalties for fraud" that are not subject to the time requirements of MCL 421.32a. *Id*. at ___; slip op at 18. However, the Agency must begin with a "determination" rather than a "redetermination" when it "seeks to established that a claimant received a 'benefit to which [the claimant] is not entitled' and imposes restitution pursuant to MCL 421.62(a)." *Id*. at ___; slip op at 26. The Court then held that the Agency's failure to begin with "determinations" was grounds for setting aside the "redeterminations," considering the different protest and appeal processes for determinations and redeterminations. See *id*. at ___; slip op at 26-30. Accordingly, the Court invalidated the "redetermination[s] finding fraud and imposing associated fines and penalties." *Id*. at ___; slip op at 3.

---

Mich App 578, 580-581; 669 NW2d 292 (2003). "This Court reviews a lower court's review of an administrative decision to determine whether the lower court applied correct legal principles and whether it misapprehended or misapplied the substantial evidence test to the agency's factual findings, which is essentially a clearly erroneous standard of review." *Vanzandt v State Employees' Retirement Sys*, 266 Mich App 579, 585; 701 NW2d 214 (2005). "Substantial evidence is evidence that reasonable persons would accept as sufficient proof to support a decision." *Motycka*, 257 Mich App at 581. "The circuit court's legal conclusions are reviewed de novo and its findings of fact are reviewed for clear error." *Mericka v Dep't of Community Health*, 283 Mich App 29, 36; 770 NW2d 24 (2009).

[5] Scott similarly argues on appeal that under MCL 421.32a(2), the Agency had 30 days or one year with good cause to make any redeterminations concerning her eligibility for unemployment benefits. However, as explained in *Lucente*, the Agency was acting pursuant to the authority conferred by MCL 421.62 and therefore was not constrained by the time limits in MCL 421.32a(2).

Following the Supreme Court's decision, we ordered the parties to file supplemental briefs addressing the effect of that decision on this case.[6] Having reviewed the supplemental briefs, we now conclude that *Lucente* requires invalidation of the "redeterminations" issued to Scott.[7]

As in *Lucente*, there were two redeterminations issued in this case: one explaining that Scott was ineligible for already-received benefits because she was not unemployed during the relevant time period, and one asserting that Scott had intentionally misrepresented or concealed information, i.e., that she had committed fraud. No original "determination" was issued with respect to this fraud determination. Because the Agency was required to "issue an original determination alleging fraud," its "failure to do so is grounds for invalidating the 'redeterminations' in this case." *Id.* at ___; slip op at 31.[8] Accordingly, the "redeterminations" issued to Scott in case nos. 0-002-333-915 and 0-002-333-916 and the associated fines and penalties are invalid. See *id.* at __; slip op at 3.

## III. THE REMAINING "DETERMINATIONS"

While the Agency improperly issued "redeterminations" regarding its decision that Scott was not unemployed, it correctly issued original "determinations" in connection with its decision that Scott committed fraud by claiming benefits after voluntary quitting her job. Thus, *Lucente* does not resolve Scott's entire appeal, and we turn to her arguments for why she is not time-barred from challenging the determinations.

Scott contends that her opportunity to appeal the Agency's determinations was tolled because the administrative record is devoid of any evidence that the Agency mailed the May 9, 2014 determinations to her or that she ever received copies of those determinations. We agree.

MCL 421.62(c) provides that "[a]ny determination made by the unemployment agency under this section is final unless an application for a redetermination is filed in accordance with section 32a." Under section 32a, an interested party has 30 days "after the mailing or personal

---

[6] *Scott v Enterprise Synergy LLC*, unpublished order of the Court of Appeals, entered August 23, 2021 (Docket No. 350690).

[7] Scott raised this issue before the ALJ, arguing that "there needs to have been a determination before there was redetermination," and the ALJ deemed that it, among other arguments, was "without merit." Although Scott did not raise this issue on appeal, we have discretion to address an issue "if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006) (citation omitted). And certainly, the Supreme Court's decision in *Lucente* must guide our review.

[8] A showing of discernable prejudice suffered by the claimant is not required. See *Scott*, ___ Mich at ___; slip op at 29. For the reasons discussed by the Supreme Court, a ruling to the contrary would effectively allow the Agency to "always begin at the 'redetermination' step, without consequence." *Id.*

service of a notice of determination" to file a request for a redetermination. MCL 421.32a(1), as amended by 2011 PA 269.[9]

In *McBride v Americana Mobile Home Park, Inc*, 173 Mich App 275, 282; 433 NW2d 336 (1988),[10] we held that there must be "some proof reflecting the fact that" an individual "was personally served with or sent a copy of the determination" as required by MCL 421.32a(1):

> We believe that in order to reflect compliance with the statutory mandate relative to notice, the [Agency] file should contain some proof reflecting the fact that respondent was personally served with or sent a copy of the determination. [In the absence of such evidence, w]e are simply unable to conclude that there was compliance with the notice provisions of the statute . . . . [*Id*.]

Accordingly, in *McBride*, we remanded to allow the employer 30 days to file an application for review of the determination on the merits when there was no evidence contradicting the employer's testimony that he did not receive a copy of the determination. *Id*. at 281-283.

We have also held, in a case concerning whether the claimant received unemployment benefits during a period of ineligibility, that the burden of proof lies with the Agency. *Lawrence v Mich Unemployment Ins Agency*, 320 Mich App 422, 439-440; 906 NW2d 482 (2017). We reasoned that "[r]equiring [the claimant] to prove that she never received [unemployment benefit] payments would be requiring her to prove a negative—a near impossibility." *Id*. at 440. Rather, it is the "party who has rendered payment that possesses the particularized knowledge and control of information necessary to prove that it undertook the affirmative action of issuing payments."

---

[9] MCL 421.32a has been revised by 2017 PA 232, effective July 1, 2018, to allow an aggrieved claimant to request a redetermination of an Agency finding of fraud "within 3 years after the date of mailing or personal service of the original determination." MCL 421.32a(2). Additionally, MCL 421.32a, as revised, now requires the Agency to provide notice of a fraud determination to an interested party by mailing the notice to the "interested party's address of record" as well as to the most recent address of the interested party as ascertained from the department of state, the department of the treasury and the United States Postal Service. MCL 421.32a(5). The trial court found that the revised version of MCL 421.32a had no retroactive application in this matter. The court noted, however, that even if the revised version of the statute applied in this matter, the evidence still established that Scott's redetermination request was time-barred as it was filed 10 months after the expiration of the 3-year limitation period.

[10] Opinions from this Court issued before November 1, 1990, are not binding upon this Court but may be considered for their persuasive value. *Jackson v Dir of Dep't of Corrections*, 329 Mich App 422, 429 n 5; 942 NW2d 635 (2019).

*Id.*[11] We conclude that this reasoning applies with equal force to the mailing of Agency determinations.

Turning to this case, we agree with Scott that the Agency failed to affirmatively establish that the determinations were ever mailed to her. The Agency's representative, Laura Glynn, testified that she reviewed the Agency's file and found no proofs of service or mailing for the May 9, 2014 determinations. Nor was there written or first-hand oral testimony that the determinations were in fact mailed. Glynn could not testify if the determinations were actually sent because she did not have personal knowledge on that matter; the ALJ also noted that he knew that Glynn was not the person who would have mailed the notices. And no computer records were admitted indicating that the determinations were sent. Glynn did testify that her review of Scott's record revealed no evidence that the May 9, 2014 determinations had been returned to the Agency as undeliverable. But the lack of returned mail in Scott's Agency file cannot support a reasonable inference that the determinations were received by Scott in the absence of affirmative evidence that the notices were mailed in the first instance.[12]

Given the lack of affirmative evidence, the Agency essentially asks us to conclude that the determinations were sent pursuant to their practices and policies. However, even putting *McBride* aside, the Agency's track record regarding fraud adjudications made during this time strongly counsels against that conclusion. MiDAS "was deeply flawed; the Michigan Auditor General reviewed over 22,000 of MiDAS' fraud determinations and found that 93% of them did not actually involve fraud. In other words, 93% of MiDAS' fraud adjudications were false-positives." *Cahoo*, 912 F3d at 894. On top of this, the Auditor General found that numerous administrative practices of the Agency were deficient, including that the Agency did not process undeliverable mail in accordance with its written policy. During 2014, the Agency received about 451,000 undeliverable pieces of returned mail. Of 50 randomly selected returned mail items, the Auditor found that the Agency's mailroom personnel inappropriately discarded 28% of the items without

---

[11] In that case, the Agency failed to offer any evidence that the claimant received benefit payments during a period of ineligibility such as "a cancelled check, a check stub, a notice of electronic funds transfer, or a bank statement." *Lawrence*, 320 Mich App at 439.

[12] The partial dissent asserts that Scott testified that she engaged legal counsel in 2014 to assist in her dispute with the Agency and reasons that this support the inference that she received the May 9, 2014 notices. When asked when she first contacted an attorney, Scott answered, "I'm not sure. I think it was around in 2016." After additional questioning about the two different attorneys that have represented her with respect to this dispute, Scott agreed with the Agency's attorney that she had counsel beginning in 2016. At one point, however, Scott testified that "this [has] been going since 2014 when I contacted Legal Aid." Regardless, the point is that Scott's testimony indicates that she obtained counsel in response to the Agency either garnishing her wages or intercepting her tax refunds. Accordingly, even if Scott obtained counsel in 2014, this is weak circumstantial evidence that she did so in response to receiving the May 9, 2014 notices.

processing them as required by the Agency's policy.[13] Thus, we are not inclined to rely on the Agency's practices and policies as proof that the determinations were sent.

The Agency also relies on the ALJ's finding that Scott's testimony that she never received the May 9, 2014 notices was not credible. Scott consistently testified that she did not receive the notices, but as to other matters, e.g., when she learned of the fraud allegations against her, she provided somewhat inconsistent and vague testimony. On this basis, the ALJ found her testimony, as a whole, not credible. The Agency is correct that we generally refer to administrative findings based on credibility determinations. *Dep't of Community Health v Risch*, 274 Mich App 365, 372; 733 NW2d 403 (2007). The Agency provides no authority, however, for the proposition that an adverse credibility determination may be used as competent affirmative evidence of a fact otherwise denied. As discussed, the Agency has the burden of proof to establish that the determinations were mailed. See *Lawrence*, 320 Mich App at 439-440; *McBride*, 173 Mich App at 282. Because there is no affirmative evidence in the record to support a finding of fact that the Agency sent the notices,[14] the trial court misapplied the substantial-evidence test to the ALJ's findings that Scott received the 2014 determinations.[15]

We therefore reverse the trial court's order affirming the ALJ's and the MCAC's decisions and remand for further proceedings. Under *McBride*, the 30-day appeal period for Scott to contest the Agency's determinations in case nos. 0-002-333-913 and 0-001-824-775 will not set to run until the issuance of this opinion.[16]

---

[13] See Performance Audit Report, Office of the Auditor General <https://audgen.michigan.gov/wp-content/uploads/2016/07/r641031814.pdf> (accessed February 25, 2022). "This Court may take judicial notice of a public record." *Burton-Harris v Wayne Co Clerk*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 353999); slip op at 3 n 3.

[14] The partial dissent opines that we are creating a requirement that the Agency "must file proofs of service." We are not certain precisely what the dissent believes must be filed and where. Our holding is that the Agency needs to be prepared to present affirmative proof of mailing in the event receipt is contested. Such proof may be offered through internal records of mailing or testimony from someone with knowledge of the mailing and is fully consistent with the holding in *McBride*.

[15] We are particularly hesitant to conclude that the Agency's lack of affirmative evidence of mailing should be overlooked in light of the Supreme Court's decision in *Lucente*, which made clear that even the most technical requirements imposed on the Agency will be strictly enforced. The substantial civil (and possible criminal) penalties that accompany fraud determinations, see MCL 421.54, also support requiring affirmative proof of mailing.

[16] Given our ruling that the Agency was obligated to offer affirmative evidence that the determinations were mailed and failed to do so, we need not address Scott's alternative argument that the content of the determinations did not provide adequate notice and so denied her due process. We also need not address Scott's argument that there is good cause to reopen her case and allow a late appeal. See MCL 421.32a(2); MI ADC R 421.270(1).

-8-

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Mark J. Cavanagh