# STATE OF MICHIGAN

# COURT OF APPEALS

---

BRANG, INC., doing business as 5 CORNERS
PARTY STORE,

        Plaintiff-Appellant,

v

LIQUOR CONTROL COMMISSION,

        Defendant-Appellee.

FOR PUBLICATION
August 10, 2017
9:00 a.m.

No. 333007
Montcalm Circuit Court
LC No. 2015-020793-AA

---

Before: HOEKSTRA, P.J., and MURPHY and K. F. KELLY, JJ.

MURPHY, J.

This appeal concerns the enforcement of Mich Admin Code, R 436.1011(6)(e), which precludes an establishment licensed by defendant Liquor Control Commission (LCC) from "[a]llow[ing] narcotics paraphernalia to be used, stored, exchanged, or sold on the licensed premises." The question posed to us regards the proper identification of products or merchandise that fall under the umbrella of "narcotics paraphernalia," as that term is employed in Rule 436.1011(6)(e). Plaintiff Brang, Inc. (the store), appeals by leave granted[1] the circuit court's order affirming the LCC's affirmation of a determination by an LCC hearing commissioner that recovered items that had been displayed and on sale in the store constituted narcotics paraphernalia in violation of Rule 436.1011(6)(e). We hold that Rule 436.1011(6)(e) is unconstitutionally vague with respect to the meaning of "narcotics paraphernalia." Accordingly, we reverse and remand for further proceedings.

## I. BACKGROUND

On September 16, 2013, the LCC issued a complaint against the store, alleging that, on August 8, 2013, LCC investigators had discovered numerous items in the store that were available for purchase by customers, which merchandise the LCC characterized as narcotics

---

[1] *Brang, Inc v Liquor Control Comm*, unpublished order of the Court of Appeals, entered August 23, 2016 (Docket No. 333007).

-1-

paraphernalia under and in violation of Rule 436.1011(6)(e).[2]  A violation hearing before an LCC hearing commissioner was held on December 11, 2013, and the two LCC investigators who conducted the inspection of the store on August 8, 2013, testified on behalf of the LCC.  Based on their experience and under the totality of the circumstances, including product placement in glass cases, product price, function, design, and size, and product location in conjunction to other items, the investigators opined that the merchandise at issue constituted narcotics paraphernalia.  According to the investigators, stickers indicating that the items were for tobacco use only did not mean that the merchandise was not narcotics paraphernalia.  The investigators seized the products, packaged them up, and transported them back to an LCC district office.

One of the store's owners testified that the items were merely tobacco accessories and that they were kept in glass cases because they were expensive, with some of the products being very small and susceptible to easy shoplifting if not protected by encasement.  He further indicated that there was over 100 pounds of loose tobacco on sale in the store, including in the glass cases.  The owner also testified that the township liquor inspector, who was unaffiliated with the LCC, along with local law enforcement, had often been in the store and voiced no concerns or anything about the merchandise now being described as narcotics paraphernalia.  The owner claimed that the items were not for use in association with narcotics.  A document, described as an LCC interpretive statement, and which was accessible on the LCC's website, was admitted into evidence at the hearing.  The interpretive statement, before setting forth a non-exhaustive list of items that could be characterized as narcotics paraphernalia, provided that "[n]arcotics paraphernalia can best be described as any equipment, product, or materials used in concealing, producing, processing, preparing, injecting, ingesting, inhaling or otherwise introducing into the human body controlled substances, which are unlawful under state, federal

---

[2] As contained in the complaint, the alleged violations of Rule 436.1011(6)(e) were separated into 27 numbered paragraphs that grouped certain products together that had been confiscated from the store by the LCC.  The 27 paragraphs, or charges, identified and classified the following items or products as narcotics paraphernalia: (1) 46 assorted metal pipes; (2) 12 glass tube pipes; (3) three bowl wood pipes; (4) five wood metal folding pipes; (5) two magnet pipes; (6) 13 one hitter pipes; (7) three splitter lighters and five "splitters-EZ-split"; (8) three glass pipes and two yellow glass pipes; (9) three stone pipes and one pipe head; (10) one pack of four glass tubes with four accessories; (11) one dish of assorted glass screens, one pack of assorted rubber accessories, one pack of assorted glass screens in baggies, one dish metal screen, and one pack of five metal pipe fittings; (12) 69 assorted glass pipes; (13) 12 glass tube pipes; (14) 29 glass bongs; (15) two "vehicle glass and plastic/metal bong/pipe system"; (16) two medium glass pipes; (17) three boxes of "Toke Token Papers and 1 box of Randy's wired papers (both opened)"; (18) one open box of letter postal scales and 15 box pocket scales; (19) eight grinders; (20) one Tootsie Roll storage container with false bottom; (21) one magic flight kit; (22) one "stok vaporizer" and three "eclipse Vake kits"; (23) four open boxes of Zig Zag wraps; (24) two theme bongs; (25) eight large glass bongs; (26) three colored plastic bongs; and (27) "1 dish chicken bones 2 pipes, 1 dish 9mm 1 pipe, 1 dish 12 glass pipes, 1 dish 9 glass pipes, 1 dish of 31 [3-inch] glass pipes, 1 dish of 13 [4-inch] and [6-inch] glass pipes and 1 dish of 21 glass pipes 8mm."

or local law." The interpretive statement's references to some of the listed items, e.g., water pipes and pipe screens, contain exceptions when the items are sold in conjunction with loose tobacco or tobacco products.

On January 10, 2014, the LCC commissioner issued an order finding that the evidence substantiated all of the 27 paragraphs of allegations, or charges, contained in the LCC complaint against the store. The commissioner imposed a fine of $50 for each of the 27 charges, totaling $1,350, ordered a one-day suspension of the store's liquor license, and directed that the seized items be disposed of in accordance with the law. The store then requested a violation appeal hearing, and a three-member LCC Appeal Board (the Board) granted the request. A violation appeal hearing was conducted over two days on September 9 and December 9, 2014. The Board remanded the case back to the hearing commissioner, indicating that it had concerns whether the merchandise constituted narcotics paraphernalia in light of the evidence, the developments in the law regarding medical marijuana under the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq.*, and the definition of "drug paraphernalia" under the Public Health Code (PHC), MCL 333.1101 *et seq.*[3]

On remand on March 25, 2015, a hearing was again conducted by the hearing commissioner, and the parties agreed to incorporate the record from the prior evidentiary hearing. In addition, the LCC presented the testimony of one of its investigators who had not previously testified and who had a background working as a police officer, in which position he gained extensive knowledge and experience regarding narcotics and narcotics paraphernalia. He did indicate that he had never smoked tobacco and had no specialized training with respect to tobacco use. The investigator did however opine that, based on his background, training, and experience and under a totality of the circumstances, all of the seized merchandise, except for the rolling papers, was primarily, if not exclusively, used in association with narcotics, not tobacco, and constituted narcotics paraphernalia. The hearing commissioner concluded that the evidence substantiated 25 of the 27 charges in the complaint, dismissing the two charges pertaining to rolling papers. He again imposed a $50 fine for each violation and a one-day license suspension, along with directing the disposal of the seized items.

---

[3] MCL 333.7453(1) provides that "a person shall not sell or offer for sale drug paraphernalia, knowing that the drug paraphernalia will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance." MCL 333.7451 states that "drug paraphernalia" is "any equipment, product, material, or combination of equipment, products, or materials, which is specifically designed for use in planting; propagating; cultivating; growing; harvesting; manufacturing; compounding; converting; producing; processing; preparing; testing; analyzing; packaging; repackaging; storing; containing; concealing; injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance[.]" MCL 333.7451(a) through (m) set forth a non-exhaustive list of examples, with each example providing that the item must be "specifically designed" for use in connection with controlled substances.

Once again, an appeal to the Board ensued, and this time the Board, in a 2-to-1 ruling, affirmed the hearing commissioner's decision following a hearing on October 6, 2015, concluding that he did not err with respect to his findings of fact and conclusions of law. The store appealed to the circuit court, and the court affirmed the Board's ruling, stating that the seized merchandise met "the plain language definition of drug paraphernalia." The store now appeals by leave granted.

## II. THE CREATION AND AUTHORITY OF THE LCC

The Legislature "may by law establish a liquor control commission which, subject to statutory limitations, shall exercise complete control of the alcoholic beverage traffic within this state, including the retail sales thereof." Const 1963, art 4, § 40. Currently in place, statutorily speaking, is the Michigan Liquor Control Code of 1998 (the Code), MCL 436.1101 *et seq.* Except as otherwise provided by the Code, the LCC "shall have the sole right, power, and duty to control the alcoholic beverage traffic and traffic in other alcoholic liquor within this state, including the manufacture, importation, possession, transportation and sale thereof." MCL 436.1201(2). Under MCL 436.1215(1), the LCC is authorized to "adopt rules and regulations governing the carrying out of [the Code] and the duties and responsibilities of licensees in the proper conduct and management of their licensed places." Rules of the LCC must be promulgated pursuant to the Administrative Procedures Act of 1969 (APA), MCL 24.201 *et seq.* MCL 436.1215(1).

## III. STANDARDS OF REVIEW

Findings and decisions of the LCC are reviewable pursuant to Const 1963, art 6, § 28. *Semaan v Liquor Control Comm*, 425 Mich 28, 40-41; 387 NW2d 786 (1986); *Kotmar, Ltd v Liquor Control Comm*, 207 Mich App 687, 689; 525 NW2d 921 (1994). And Const 1963, art 6, § 28, provides as follows:

> All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record.[4]

---

[4] Also, MCL 24.306, which is part of the APA, provides:

> (1) Except when a statute or the constitution provides for a different scope of review, the court shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is any of the following:

We review de novo the construction of an administrative rule. *City of Coldwater v Consumers Energy Co*, ___ Mich ___, ___; 895 NW2d 154 (2017); slip op at 5.

With respect to this Court's review of the circuit court's examination of agency action, we must determine whether the circuit court applied correct legal principles and whether the circuit court misapprehended or grossly misapplied the substantial evidence test in relation to the agency's factual findings. *Hanlon v Civil Serv Comm*, 253 Mich App 710, 716; 660 NW2d 74 (2002). "This latter standard is essentially a clearly erroneous standard of review[.]" *Id.* This Court gives great deference to a circuit court's review of the factual findings made by an administrative agency, but substantially less deference, if any, is accorded to the circuit court's decisions on matters of law. *Mericka v Dep't of Community Health*, 283 Mich App 29, 36; 770 NW2d 24 (2009).

## IV. ADMINISTRATIVE RULES – PRINCIPLES OF CONSTRUCTION

Just as with statutes, the foremost rule in construing an administrative rule, and our primary task, is to discern and give effect to the administrative agency's intent. *City of Coldwater*, ___ Mich at ___; slip op at 5. This Court begins with an examination of the language in the administrative rule, which provides the most reliable evidence of the agency's intent, and if the language is unambiguous, the rule must be enforced as written, absent any further judicial construction. *Id.* at ___; slip op at 5-6. We may go beyond the words of the administrative rule to ascertain the agency's intent only when the rule is ambiguous. *Id.* at ___; slip op at 6. This Court must give effect to every clause, phrase, and word in an administrative rule and avoid a construction that would render any part of the rule surplusage or nugatory. *Id.* We generally defer to the construction of an administrative rule given by the agency charged with administration of the rule when the rule is ambiguous; "[h]owever, this deference does not mean that a reviewing court abandons its ultimate responsibility to give meaning to . . . administrative

---

(a) In violation of the constitution or a statute.

(b) In excess of the statutory authority or jurisdiction of the agency.

(c) Made upon unlawful procedure resulting in material prejudice to a party.

(d) Not supported by competent, material and substantial evidence on the whole record.

(e) Arbitrary, capricious or clearly an abuse or unwarranted exercise of discretion.

(f) Affected by other substantial and material error of law.

(2) The court, as appropriate, may affirm, reverse or modify the decision or order or remand the case for further proceedings.

rules." *City of Romulus v Dep't of Environmental Quality*, 260 Mich App 54, 65; 678 NW2d 444 (2003) (citation omitted). And such deference is not accorded to the agency when the administrative rule is unambiguous or when the agency's interpretation is clearly wrong. *Id.* at 65-66.

Section 32(1) of the APA provides that the "[d]efinitions of words and phrases and rules of construction prescribed in any statute that are made applicable to all statutes of this state also apply to rules unless clearly indicated to the contrary." And MCL 8.3 states that "[i]n the construction of the statutes of this state, the rules stated in sections 3a to 3w shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature." MCL 8.3a provides:

> All words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.

## V. DISCUSSION AND RESOLUTION

Again, Rule 436.1011(6)(e) precludes an establishment licensed by the LCC from "[a]llow[ing] narcotics paraphernalia to be used, stored, exchanged, or sold on the licensed premises." There is no administrative rule defining "narcotics paraphernalia." And the LCC's interpretive statement simply cannot be utilized or relied upon to resolve this case. See MCL 24.232(5).[5] An interpretative statement is not a rule. MCL 24.207(h). We hold that the term "narcotics paraphernalia," standing alone as it does in Rule 436.1011(6)(e) absent any parameters, is unconstitutionally vague.[6]

---

[5] MCL 24.232(5) provides:

> A guideline, operational memorandum, bulletin, interpretive statement, or form with instructions is not enforceable by an agency, is considered merely advisory, and shall not be given the force and effect of law. An agency shall not rely upon a guideline, operational memorandum, bulletin, interpretive statement, or form with instructions to support the agency's decision to act or refuse to act if that decision is subject to judicial review. A court shall not rely upon a guideline, operational memorandum, bulletin, interpretive statement, or form with instructions to uphold an agency decision to act or refuse to act.

[6] The store does not specifically frame its argument in terms of a constitutional vagueness challenge; however, the store's complaints about Rule 436.1011(6)(e), e.g., that there is no definition of "narcotics paraphernalia" and that there are inadequate standards or principles governing its application, are essentially in the nature of a vagueness challenge.

"In order to find a law unconstitutionally vague, there must be a showing that (1) it is overbroad, impinging on First Amendment freedoms; (2) it does not provide fair notice of the conduct proscribed; or (3) it is so indefinite that it confers unstructured and unlimited discretion on the trier of fact to determine whether an offense has been committed." *Kotmar*, 207 Mich App at 696 (examining the constitutionality of an LCC rule) (citation omitted). The instant case does not concern possible intrusions on First Amendment freedoms; rather, our focus is on whether Rule 436.1011(6)(e) provides fair notice and whether it is too indefinite. "Vagueness challenges to . . . administrative rules which do not involve First Amendment freedoms must be examined in light of the facts at hand." *Ron's Last Chance, Inc v Liquor Control Comm*, 124 Mich App 179, 182; 333 NW2d 502 (1983) (citation omitted). Due process requires the existence of reasonably precise standards to be employed by administrative agencies in performing their delegated legislative tasks. *Adkins v Dep't of Civil Service*, 140 Mich App 202, 213-214; 362 NW2d 919 (1985). In *Allison v City of Southfield*, 172 Mich App 592, 595-596; 432 NW2d 369 (1988), this Court observed:

> A statute or, in this case, a regulation is violative of due process on the ground of vagueness when it either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. Essentially, the doctrine of vagueness ensures that a regulation give its readers fair notice of what types of conduct are prohibited. . . . Even if one of the evils sought to be prevented by the vagueness doctrine is the vesting of unstructured discretion and the resultant arbitrary and discriminary enforcement of the law, the doctrine is not triggered unless the wording of the promulgation is itself vague. [Citations and quotation marks omitted.]

Agency standards must and need only be as reasonably precise as the subject matter permits or requires. *Mich Waste Sys v Dep't of Natural Resources*, 147 Mich App 729, 739; 383 NW2d 112 (1985) (citations omitted); *Adkins*, 140 Mich App at 214. "A purpose of this requirement is to close the door to favoritism, discrimination and arbitrary uncontrolled discretion on the part of administrative agencies, and provide adequate protection to the interests of those affected." *Adkins*, 140 Mich App at 214 (citations omitted). "[S]tandards must be sufficiently broad to permit efficient administration . . ., but not so broad that the people are unprotected from uncontrolled or arbitrary power in the hands of administrative officials." *Mich Waste Sys*, 147 Mich App at 739 (citation omitted).

Former United States Supreme Court Justice Potter Stewart once famously observed, "I know it when I see it," in regard to identifying "hard-core pornography," while adding that he would not attempt to define the term and questioning whether he even could "succeed in intelligibly doing so." *Jacobellis v Ohio*, 378 US 184, 197; 84 S Ct 1676; 12 L Ed 2d 793 (1964) (Stewart, J., concurring). Our visceral reaction is similar when it comes to identifying "narcotics paraphernalia," giving us pause to find the term unconstitutionally vague and initially making us wonder whether the language may be as reasonably precise as the subject matter requires. However, on further and careful reflection and for the reasons expressed below, we conclude that the term "narcotics paraphernalia" is simply too vague for purposes of fair enforcement, and reasonably precise standards could indeed be easily crafted in a promulgated rule to avoid the vagueness problem.

First, we find it problematic and confusing that the LCC treats the term "narcotics paraphernalia" as effectively being interchangeable with the term "drug paraphernalia," such that the LCC necessarily views marijuana paraphernalia as violative of Rule 436.1011(6)(e), as evidenced by the interpretive statement and the positions of the three LCC investigators, the hearing commissioner, and the Board. The LCC has used the language "narcotics paraphernalia" ever since Rule 436.1011 first became effective on February 3, 1981, see 1979 Annual Admin Code Supp, R 436.1011, and at that time our Legislature did not include marijuana in the PHC's definition of "narcotic drug," see MCL 333.7107; 1978 PA 368, effective September 30, 1978.[7] All narcotics are drugs, but not all drugs are narcotics. See MCL 333.7107; *Merriam-Webster's Collegiate Dictionary* (11th ed) (defining "narcotic" as "a drug [such as opium or morphine] that in moderate doses dulls the senses, relieves pain, and induces profound sleep but in excessive doses causes stupor, coma, or convulsions"); *Stedman's Medical Dictionary* (20th ed) (defining "narcotic" as "[a] drug which, used in moderate doses, produces stupor, insensibility, or sound sleep").[8] In *Michigan v Long*, 463 Mich 1032, 1044 n 10; 103 S Ct 3469; 77 L Ed 2d 1201 (1983), the United States Supreme Court commented:

> At the time that the 1963 Michigan Constitution was enacted, it is clear that marijuana was considered a narcotic drug. See 1961 Mich Pub Acts, No. 206 § 1(f). Indeed, it appears that marijuana was considered a narcotic drug in Michigan until 1978, when it was removed from the narcotic classification.

Given this background, and although we appreciate that the definition of "narcotic drug" in MCL 333.7107 specifically pertains to Article 7 of the PHC (controlled substances), see MCL 333.7101(1) ("for purposes of this article . . ."), we cannot help but question and it escapes us why the LCC, if it indeed intended to capture marijuana paraphernalia within Rule 436.1011(6)(e), did not simply use the term *drug* paraphernalia. To be clear, we are not ruling that the LCC did not intend to encompass marijuana paraphernalia in crafting Rule 436.1011,

---

[7] In part, MCL 333.7107 provides today, and provided in 1978, that a "narcotic drug" encompasses:

> (a) Opium and opiate, and any salt, compound, derivative, or preparation of opium or opiate.

> (b) Any salt, compound, isomer, derivative, or preparation thereof which is chemically equivalent or identical with any of the substances referred to in subdivision (a), but not including the isoquinoline alkaloids of opium.

[8] In *United States v Miller*, 179 F3d 961, 965 n 7 (CA 5, 1999), the Fifth Circuit of the United States Court of Appeals noted that "[w]e assume that the Government is aware that marijuana is not a narcotic and that references in its brief are meant to include all drugs, and not just narcotics[.]" In an opinion in *People v Summit*, 183 Colo 421, 430; 517 P2d 850 (1974), the dissent stated that "[a]s candidly conceded by the majority opinion, the overwhelming weight of eminent scientific authority points to the conclusion that marijuana is not a Narcotic drug."

although that is certainly arguable for the reasons expressed above. Instead, we are simply recognizing that the decision to specifically reference "narcotics" paraphernalia in Rule 436.1011(6)(e), while ostensibly intending to bar all "drug" paraphernalia, leads to the very indefiniteness, uncertainty, and lack of fair notice and precision that the void-for-vagueness doctrine seeks to eliminate.

Moreover, aside from serious concerns about the soundness and validity of including marijuana paraphernalia under Rule 436.1011(6)(e), the same indefiniteness, uncertainty, and lack of fair notice and precision exist with respect to paraphernalia connected to other drugs that are not technically recognized as narcotics in the field of medicine and under the PHC. Additionally, the interpretive statement, which the LCC advises licensees to review, speaks in terms of paraphernalia that is used in connection with *unlawful* controlled substances. Rule 436.1011(6)(e) does not indicate whether narcotics paraphernalia includes paraphernalia used in association with a controlled substance that, in some cases, might be used by an individual in a *lawful* manner. Thus, the impact or effect of the MMMA on what constitutes narcotics paraphernalia for purposes of Rule 436.1011(6)(e) creates further uncertainty and confusion, assuming that marijuana can be viewed as a narcotic in the first place under the rule.

The primary reason that we hold that Rule 436.1011(6)(e) is unconstitutionally vague is that it fails to supply any parameters, guidance, standards, criteria, or quantifiers in regard to identifying "narcotics paraphernalia," other than those necessarily arising out of the term itself, thereby making it susceptible to arbitrary and discriminatory enforcement. The Legislature, in outlawing the sale of drug paraphernalia under the PHC, astutely required proof that a vendor know that the merchandise is to be used in relation to a controlled substance, MCL 333.7453(1), and that the product be "specifically designed" for use in connection with a controlled substance, MCL 333.7451. No such precision is found in Rule 436.1011(6)(e). In relevant part, the dictionary broadly defines "paraphernalia" as "articles of equipment" or "accessory items." *Merriam-Webster's Collegiate Dictionary* (11th ed). Articles of equipment or accessory items relative to the use of narcotics could encompass such items as pipes for smoking, scales, rolling papers, razor blades, spoons, baggies, syringes, pacifiers, lighters, mirrors, elastics, etc., all of which can generally be used for legal purposes, but which can also be employed in the use of narcotics, differing with respect to the likelihood of a narcotic-related use or whether the manufacturer intended or envisioned such a use.

Rule 436.1011(6)(e) simply does not provide any criteria or guidance to determine, for example, whether a pipe that can actually be used to smoke tobacco and to smoke a narcotic drug constitutes narcotics paraphernalia, thereby causing persons of common intelligence to guess at whether the pipe violates the rule. Does an item need to be primarily or predominantly used in connection with a narcotic in order to be designated as narcotics paraphernalia, or can rare or occasional use suffice? Is it pertinent for identifying narcotics paraphernalia whether the manufacturer specifically designed a product for use in relationship to a narcotic, or is the manufacturer's intent irrelevant? Does a licensee's knowledge, or lack thereof, regarding an item's use or intended use play any role in the equation? Rule 436.1011(6)(e) provides no insight or answer to these questions. And although it is true that the LCC investigators testified at times that certain products were almost always or primarily used in connection with narcotics, Rule 436.1011(6)(e) itself contains no such standard, quantifier, or demand, resulting in indefiniteness, uncertainty, and a lack of fair notice and precision that even the Board found

concerning. In sum, Rule 436.1011(6)(e) is unconstitutionally vague and is thus void and unenforceable by the LCC. Accordingly, we reverse the rulings of the circuit court, the Board, and the hearing commissioner, and remand for entry of an order dismissing the LCC complaint against the store.

Reversed and remanded for further proceedings consistent this opinion. We do not retain jurisdiction. Having fully prevailed on appeal, the store is awarded taxable costs under MCR 7.219.

/s/ William B. Murphy
/s/ Joel P. Hoekstra
/s/ Kirsten Frank Kelly