*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JBS PLAINWELL, INC.,

        Petitioner-Appellant,

v

OCCUPATIONAL SAFETY AND HEALTH
ADMINISTRATION,

        Respondent-Appellee.

UNPUBLISHED
March 7, 2024

No. 361781
Allegan Circuit Court
LC No. 2021-064913-AA

Before: HOOD, P.J., and MURRAY and MALDONADO , JJ.

PER CURIAM.

In this administrative review action, petitioner, JBS Plainwell, Inc., appeals by leave granted[1] the trial court order affirming in part, and vacating in part, the final order of the Board of Health and Safety Compliance and Appeals (the Board). On appeal, petitioner argues that: (1) the Board's decision is not supported by competent, material, and substantial evidence because the Board's decision rests solely on hearsay; and (2) even if the Board's decision was supported by competent, material, and substantial evidence, the decision did not contain substantial evidence of each element necessary to establish a violation of a Michigan Occupational Safety and Health Administration (MIOSHA) standard. We affirm.

## I. BACKGROUND

JBS operates a meat-processing facility in Plainwell. On February 11, 2019, JBS employee Christy Cox was injured after her torn frock became caught in a wheel on the underside of a conveyor—when Cox attempted to pull her frock out of the wheel, her hand got sucked into the moving conveyor. At the time of Cox's injury, the conveyor was missing a top-side guard.

---

[1] *JBS Plainwell, Inc v Occupational Safety and Health Administration*, unpublished order of the Court of Appeals, entered January 19, 2023 (Docket No. 361781).

In March of that year, Andrew Shineldecker, a MIOSHA-workplace-safety-officer, completed an inspection at the facility. After his inspection, Shineldecker prepared a field narrative report containing notes about what the JBS employees told him during his inspection. After his inspection, Shineldecker recommended Citation 1, Item 1b, which provided as follows:

Citation 1 Item 1b            Type of Violation: Serious

408.11442(2): GI PART 14, CONVEYORS

A nip point at a pulley shall be guarded by an enclosure or barrier constructed to prevent access by an employee's body members or loose clothing.

(The Bagger conveyor did not have a guard, exposing nip points on the conveyor, located in the Bagger Area.)

At the subsequent administrative hearing, the administrative law judge determined that Citation 1, Item 1b should be vacated because JBS did not violate Mich Admin Code, R 408.11442(2), reasoning:

The evidence further establishes that, in direct violation of [JBS's] safety and security procedures, Ms. Cox wore a torn frock. In fact, Mr. Shineldecker's Field Narrative clearly indicates that Ms. Cox told him that fragments of her torn frock became snagged in moving parts several times on the day of the incident, and yet, she continued to work in this condition until it was too late, resulting in her injury. This suggests that Ms. Cox's actions were not reasonably predictable, given her training. Thus, her actions are appropriately characterized as unforeseeable and largely unpreventable.

MIOSHA filed an appeal to the Board, which reversed the ALJ's decision to vacate the citation, concluding "that the preponderance of the evidence shows that [Cox] had access and was exposed to the unguarded nip-point, given the conveyor's normal operation and therefore [JBS] violated Mich Admin Code, R 408.11442(2)." On subsequent appeal, the circuit court affirmed the Board's decision, holding that: (1) the field narrative report was admissible hearsay, and (2) the Board's decision was supported by substantial evidence.

II. ANALYSIS

JBS argues that the Board's decision was not supported by competent, material, and substantial evidence because it rested solely on inadmissible hearsay. JBS preserved this issue by objecting to the admission of the field report during the administrative hearing, and arguing in the circuit court that the Board's decision was contrary to the principle that a citation cannot stand solely on hearsay, here the field narrative report. See *Ayotte v Dep't of Health and Human Servs*, 337 Mich App 29, 39; 972 NW2d 282 (2021).

"[W]hen reviewing a lower court's review of agency action this Court must determine whether the lower court applied correct legal principles and whether it misapprehended or grossly

misapplied the substantial evidence test to the agency's factual findings." *Boyd v Civil Serv Comm*, 220 Mich App 226, 234; 559 NW2d 342 (1996). The substantial-evidence test "is essentially a clearly erroneous standard of review." *VanZandt v State Employees' Retirement Sys*, 266 Mich App 579, 585; 701 NW2d 214 (2005). Therefore, "the circuit court's decision will only be overturned if this Court is left with a definite and firm conviction that a mistake was made." *Id*.

"This Court gives great deference to a circuit court's review of the factual findings made by an administrative agency, but substantially less deference, if any, is afforded to the circuit court's decisions on matters of law." *Brang, Inc v Liquor Control Comm*, 320 Mich App 652, 660-661; 910 NW2d 309 (2017). Pursuant to Const 1963, art 6, § 28, judicial review of the administrative fact-finding is limited to determining whether the "decision is contrary to law or is not supported by competent, material, and substantial evidence. Substantial evidence is more than a mere scintilla but less than a preponderance of the evidence." *McArthur v Borman's, Inc*, 200 Mich App 686, 689; 505 NW2d 32 (1993) (citation omitted). "A tribunal's evidentiary decisions are reviewed for an abuse of discretion." *Nat'l Wildlife Federation v Dep't of Environmental Quality*, 306 Mich App 369, 373; 856 NW2d 394 (2014).

There are two issues presented for our resolution: (1) was the Field Narrative inadmissible hearsay, and (2) if not, was the violation of Rule 408.11442(2) proven by substantial and material evidence.

## A. IS THE FIELD NARRATIVE HEARSAY?

In *Blozina v Castile Mining Co*, 210 Mich 349, 352-353; 178 NW 57 (1920), the Court concluded that an administrative board cannot exclusively rely on inadmissible hearsay evidence for its decision:

> The statements contained in [the report] are hearsay, and while we do not reverse for the admission of hearsay testimony, and do affirm where there is any proper testimony to support the finding, notwithstanding the admission of the improper evidence, where the only evidence in the record to support the finding is *inadmissible hearsay* evidence, we are bound to say as matter of law that the finding is not supported by the evidence-i.e., competent evidence. [Emphasis added.]

See also *Dillon v Lapeer State Home and Training Sch*, 364 Mich 1, 8; 110 NW2d 588 (1961) ("[A]dministrative tribunals may receive and consider *evidence which would not be competent in court proceedings*, yet their decisions cannot be wholly based on such evidence, but must have a basis in some competent legal evidence.") (Quotation marks and citation omitted; emphasis added.) Therefore, administrative decisions cannot be solely[2] based on inadmissible hearsay evidence.

The trial court concluded that the field narrative report was admissible hearsay. The field narrative contains two levels of hearsay: (1) the report itself, and (2) the JBS-employee statements

---

[2] According to the ALJ, respondent submitted other evidence, including photographs of the conveyor, during the hearing.

included in the report. "Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule." MRE 805.

In *Airgas Specialty Prod v Mich Occupational Safety and Health Admin*, 338 Mich App 482, 515-516; 980 NW2d 530 (2021), this Court discussed the potential admissibility of a field narrative report under several exceptions to the hearsay rule. In doing so, the Court held that it would be admissible under the hearsay exceptions that petitioner argues do not apply:

" 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is generally inadmissible unless it falls within a listed exception. MRE 802. A statement that is not offered to prove the truth of the matter asserted is not hearsay. *Guerrero v Smith*, 280 Mich App 647, 660; 761 NW2d 723 (2008). There appear to be several exceptions that could apply in this case. For example, MRE 803(6), which applies to records of regularly conducted activity, provides that the following items are "not excluded by the hearsay rule":

A memorandum, report, record, or data compilation, in any form, of acts, transactions, occurrences, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with a rule promulgated by the supreme court or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Respondent maintains that the field narrative was the product of an allegedly routine inspection, which petitioner does not dispute. Further, the employee statements in the field narrative could also be exempted from the definition of hearsay as statements by a party opponent. Specifically, MRE 801(d)(2) provides in part that a statement is not hearsay if it is

offered against a party and is (A) the party's own statement, in either an individual or a representative capacity, . . . or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) *a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship*[.] [Emphasis added.]

Additionally, MRE 701 permits lay witnesses to offer opinion testimony based on their perceptions. Therefore, had respondent been obliged to do so, it could have established the proper foundation to present the contents of the field narrative and investigation report through the testimony of the respective authors. [*Airgas Specialty Prod*, 338 Mich App at 515-516.]

Thus, even though the rules of evidence are relaxed in administrative proceedings, see MCL 24.275 and Mich Admin Code, R 792.10125, under *Airgas*, the field narrative was admissible hearsay. Shineldecker testified that he regularly conducted inspections for MIOSHA, and he regularly recorded his observations in a field narrative. Shineldecker explained that after his inspection of JBS, he prepared a field narrative report that contained notes regarding what the employees told him during his inspection. These facts indicate that the field narrative report is admissible pursuant to MRE 803(6).

### B. WAS A VIOLATION OF THE RULE PROVEN?

Even if the Board could rely solely on the field narrative report, JBS argues that the field narrative report did not contain substantial evidence of each element necessary to establish a violation of a MIOSHA standard.

Part 14 of MIOSHA's General Industry Standard governs the use of conveyors in general industry business operations. Specifically, Part 14 "applies to the construction, maintenance, and operation of conveyors and conveying machinery in, about, or around employment." Mich Admin Code, R 408.11401. Citation 1, Item 1b states that JBS violated Rule 408.11442(2), which provides: "A nip point at a pulley shall be guarded by an enclosure or barrier constructed to prevent access by an employee's body members or loose clothing." MIOSHA determined that JBS violated Mich Admin Code R, 408.11442(2) because "[t]he Bagger conveyor did not have a guard, exposing nip points on the conveyor, located in the Bagger Area."

To prove a violation of a MIOSHA standard, MIOSHA must establish, by a preponderance of the evidence, that: "(1) the cited standard applies; (2) the employer failed to comply with the terms of the cited standard; (3) employees had access to the violative condition; and (4) the cited employer either knew or could have known with the exercise of reasonable diligence of the violative condition." *Norman W Fries, Inc d/b/a Claxton Poultry Farms*, MIOSHA Citation Appeal, ALJ Report (Docket No. 17-0304), 3-4, issued August 22, 2018; see also *EES Coke Battery, LLC*, MIOSHA Citation Appeal, ALJ Report (Docket No. 2010-318), 14, issued April 25, 2011.

Regarding the first element, there is no question that the Rule 408.11442(2) standard applies because JBS's meat-processing facility employs conveyors in its business operations. Regarding the second and third elements—whether JBS failed to comply with Rule 408.11442(2) and whether employees had access to the hazardous condition—ALJ Goldstein reasoned:

[MIOSHA], the party bearing the burden of proving [JBS] violated this standard, produced no photographic or video evidence of the conveyor in operation without the guard, and produced no witnesses who observed the alleged violative condition. [MIOSHA] also produced no evidence concerning where on the conveyor machine

Ms. Cox was working at the time of the accident and further produced no evidence regarding measurements or other factors utilized in *Fries* to evaluate how the conveyor operates without a guard, to speculate how large or small the nip-point gaps must be, how far the nip-point must be from the operator, or whether exposure was theoretically possible if, as [JBS] contends, Ms. Cox's frock was merely "loose" instead of "torn."

JBS argues that the occurrence of Cox's injury, alone, does not demonstrate a violation of the guarding standard. That may well be, but the record compiled during the administrative hearing contains evidence in addition to her injury. For one, as the Board found, the evidence showed that at the time of her injury the conveyor did not have a "top-side guard," which exposed the nip point and thus did not "prevent access by [Cox's] … loose clothing," Rule 408.11442(2), thus causing Cox's injury.[3]

Regarding the fourth element—whether JBS knew, or with the exercise of reasonable diligence should have known of the violative condition—JBS argues that there was no evidence supporting the Board's conclusion that it could have known with the exercise of reasonable diligence of the violative condition that the guard was missing. But under the appropriate standard of review, we find that there was sufficient evidence for the Board to conclude that JBS "could have known" that the guard was missing. For example, JBS safety manager Steven White[4] testified that he arrived at the scene approximately 30 minutes to an hour after Cox's injury occurred, and saw that the guard was not in place. White did not know how long it had been missing, but thought that the guard may have been removed for "[c]leaning and/or repair." White further testified that before production began on the day of Cox's injuries, a supervisor was supposed to inspect the conveyor that Cox was working on, but the supervisor reported nothing that day. Additionally, Cox stated during the investigation that the guard had been absent for months.

Based on this circumstantial evidence, and a deferential standard of review, the Board could properly find that because (1) the top guard was missing when Cox was injured, (2) Cox stated that it was missing for months, and (3) JBS knew that the guards were routinely removed for maintenance work, JBS "could have known" that Cox could be exposed to a violation.

---

[3] JBS further argues that although a "top-side guard" was missing when Cox was injured, an exhibit displayed "a side barrier guard between the operation station and the nip-point." But it was for the Board, which has expertise in employee safety matters, to decide whether the appropriate guard was absent that caused the injury and rule violation.

[4] We recognize that White was petitioner's witness, not respondent's. But we review the whole record to determine whether an agency decision is supported by competent, substantial, and material evidence. *Barker Bros Constr v Bureau of Safety and Regulation*, 212 Mich App 132, 141; 536 NW2d 845 (1995).

Affirmed.

/s/ Noah P. Hood
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado